UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WALTER EDGARDO SANTAMARIA HENRIQUEZ,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-2962-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Walter Edgardo Santamaria Henriquez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, challenging an immigration judge's ("IJ") July 16, 2026, bond denial as unlawful. Dkt. 1, ¶¶ 39-58. He seeks release from custody or a hearing where the Government would bear the burden of "justifying [his] detention by clear and convincing evidence." *Id.* at 23-24. He also seeks related declaratory and injunctive relief. *Id.* at 24-25. Respondents filed a return (Dkt. 6), together with a declaration from their counsel Barbara Andrade (Dkt. 7) ("Andrade Decl.") and U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (Dkt.

8) ("Hubbard Decl."). Respondents also filed an "audio recording of the bond hearing held on July 16, 2026." *See* Dkt. 9 (Notice of Filing). Petitioner filed a traverse in reply. Dkt. 10.

Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras, who entered the United States without inspection on September 15, 2020. Hubbard Decl., ¶ 4; Dkt. 1, ¶ 1.

On June 3, 2026, ICE Emergency and Removal Operations ("ERO") agents were conducting a "targeted enforcement operation" in Ponderay, Idaho, during which agents "encountered" Petitioner and took him into custody. Hubbard Decl., ¶ 5.

DHS administrative records provided by Respondents include a Form I-213, which documents Petitioner's arrest in a written narrative. *See* Andrade Decl., ¶ 2, Ex. B. The report documents that ICE agents began investigating a roofing company contracted by the Sandpoint Inn in Ponderay, Idaho after agents learned the roofing company was possibly employing noncitizens. *Id.* at 3. On June 3, 2026, officers observed a vehicle being driven by Petitioner pull into a vacant lot near the Inn. *Id.* Officers approached Petitioner, asked for his identification, and learned that Petitioner "had previously been encountered by immigration in 2020 and voluntarily returned to Honduras." *Id.* at 4. ICE arrested Petitioner and transported him to the Kootenai County, Idaho jail for "overnight housing." *Id.* Petitioner was served with an I-200 Warrant for Arrest of Noncitizen. Hubbard Decl., ¶ 5. The warrant is not in the record.

Petitioner was transferred to the NWIPC on June 4, 2026. *Id.* ¶ 6. He was served with a Notice to Appear ("NTA"), charging him with being inadmissible under the Immigration and Nationality Act ("INA"). *Id.* ¶ 7. The NTA was filed with the Tacoma immigration court. *Id.*

On June 26, 2026, Petitioner filed an application for asylum and withholding of removal. Dkt. 1, ¶ 26.

While detained, Petitioner sought a bond redetermination hearing with the immigration court, which was subsequently held on July 16, 2026. Hubbard Decl., ¶¶ 8-9. Prior to the hearing, Petitioner submitted a "bond packet" and submitted evidence he believed to be relevant to his request. *See* Dkt. 1-3. This included his written motion (*id.* at 3-7), his application for asylum and other relief (*id.* at 12-13), a Washington State Patrol document showing a lack of criminal history (*id.* at 15), a declaration from Petitioner attesting to his continuous residency in Spokane Valley (*id.* at 18), letters of support (*id.* at 20-32), and a letter from a U.S. citizen willing to sponsor him (*id*. at 6-7, 29). It is unclear from the record what evidence the Government submitted for the hearing.

At the hearing, the IJ found that the court lacked jurisdiction to consider Petitioner's request. *Id.* at 40. The IJ issued his order using a checkbox form that indicates the IJ found the court lacked jurisdiction because Petitioner was subject to mandatory detention "under *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)." *Id.* The IJ made an alternative finding, which indicates the IJ would have denied bond based on a flight risk "if the [c]ourt had jurisdiction[.]" *Id.* at 41. The order has another box checked under "Additional information" which states, "Conditional release is DENIED under any conditions set by ICE/DHS." *Id.* Finally, the order indicates the IJ considered Petitioner's ability to pay a bond. *Id.* The order does not contain any additional findings, reasoning, or authority supporting the flight risk finding. *Id.* Petitioner did not appeal the IJ's bond decision. Hubbard Decl., ¶ 9.

After the bond hearing, Petitioner attended an immigration hearing, at which an IJ denied Petitioner's applications for relief and ordered Petitioner removed to Honduras. *Id.* ¶ 10.

Petitioner filed an appeal of the IJ's removal order with the Board of Immigration Appeals ("BIA") on August 31, 2026. Dkt. 12 at 1.

On August 20, 2026, Petitioner filed the instant petition. Dkt. 1. The Court ordered the parties to provide supplemental briefing addressing whether Petitioner filed an appeal of the IJ's removal order and whether Petitioner was subject to a final order of removal. Dkt. 11. The parties filed a joint status report on September 22, 2026, agreeing Petitioner is not subject to a final order of removal or mandatory detention under 8 U.S.C. § 1231. Dkt. 12 at 1.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. <u>DISCUSSION</u>

Petitioner asserts that the IJ's finding was "legally flawed" and was therefore an abuse of discretion. Dkt. 1 at 15. He further asserts that the IJ failed to apply the relevant factors under *In Re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), in making the alternative flight risk finding and failed to "reference the 30-plus pages of evidence and argument that [he] submitted in support of" bond. *Id.* These failures, according to Petitioner, violated his Fifth Amendment right to due process. *Id.* at 15-22.

Respondents acknowledge that the IJ wrongly "concluded that Petitioner was subject to mandatory detention under § 1225(b)" and that, under *Rodriguez Vazquez v. Bostock*, 183 F.4th

1160 (9th Cir. 2026), Petitioner's detention is governed under the discretionary framework in 8 U.S.C. § 1226(a). Dkt. 6 at 2; *see also infra*, Part B. Nevertheless, Respondents assert that Petitioner is not entitled to release because "Petitioner had failed to meet his burden of demonstrating that he is not a flight risk[.]" *Id.* Respondents assert that, should the Court grant relief, the appropriate remedy is for this Court to order the IJ to issue a "written bond memorandum," which would have "develop[ed] the record and clarif [ied] the IJ's reasoning." *Id.* at 2, 7. Respondents contend that once the written memorandum became available, Petitioner could then challenge the IJ's decision in a habeas petition. *Id.* at 11.

**A. The Court Waives Exhaustion**

As noted, Petitioner did not appeal the IJ's decision to the BIA. Exhaustion in this context is a prudential, rather than a jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of *these Laing factors* applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (first citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (petitioner "must show that at least one of the *Laing* factors applies in order to excuse exhaustion"), and then citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (declining to waive exhaustion requirement because petitioner has not "demonstrated grounds for excusing [them]")).

Petitioner asserts exhaustion would be futile because the BIA continues to decline jurisdiction under *Yajure-Hurtado*, despite the order and judgment from the district court in *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), *aff'd sub nom. Rodriguez Vazquez*, 183 F.4th 1160.[1] Dkt. 1 at 5-6. Petitioner also asserts his detention has caused irreparable injury, both from the violation of his constitutional rights, and from "subpar" medical care in the NWIPC and the separation from his partner and stepchildren, for whom he provided financial, emotional, and practical support. *Id.* at 7.

The Court finds this sufficient to waive the exhaustion requirement. Recent government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez*, 802 F. Supp. 3d at 1307. Petitioner has been detained since June 2026 and requiring him to wait for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

Further, "economic burdens imposed on detainees and their families as a result of detention", together with "the collateral harms to children of detainees whose parents are detained" are relevant considerations. *See Hernandez*, 872 F.3d at 995; *see also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (acknowledging the separation of families constitutes "substantial injuries and even irreparable harms"). The Court therefore waives any exhaustion requirement.

//

[1] Petitioner briefed exhaustion before the Ninth Circuit affirmed the district court in *Rodriguez Vazquez*. The parties do not address whether the immigration court or the BIA continue to decline jurisdiction under *Yajure-Hurtado* in light of the Ninth Circuit's recent ruling.

**B. The IJ Abused Her Discretion**

The IJ's determination that Petitioner presents a flight risk presents a mixed question of fact and law reviewable in habeas for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779–80 (9th Cir. 2024). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). The Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id*. at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In Re Guerra*, 24 I. & N. Dec. at 40 (citing *Matter of Patel*, 15 I. & N. Dec. 666 (BIA 1976)). An immigration judge may also consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee prosecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id.*

The Court has reviewed the hearing audio and provides a brief summary here: The IJ introduced herself, identified the case name and number, and acknowledged counsel was appearing by video. Dkt. 9 at 00:10-00:50. A Spanish language interpreter was utilized for translation. *Id.* at 01:12. The Court acknowledged Petitioner's motion for bond and marked the motion as "exhibit 1." *Id.* at 01:20-01:40. The court marked the government's evidence as "exhibit 2." *Id.* at 01:50.

Petitioner's counsel argued that Petitioner was eligible for bond because he was not subject to mandatory detention, citing class membership in "*Rodriguez Vazquez v. Bostock*." *Id.* at 03:20-03:36. She argued that Petitioner has been in the United States for nearly six years and has no arrests or convictions. *Id.* at 03:42-03:52. She asserted he was therefore not a danger to the community or national security. *Id.* at 04:00-04:06. Petitioner's attorney also pointed to the testimony of friends and family showing that Petitioner is an "upstanding member of the community." *Id.* at 04:20. Petitioner's attorney also reiterated that Petitioner would be employed upon his release. *Id.* at 04:30-04:32. Given the "ties to the community that Petitioner built over the years," Petitioner's attorney requested bond be imposed. *Id.* at 04:48-05:04.

Counsel for the Government argued that Petitioner has "never been lawfully admitted to the United States," that he was docketed for a hearing to decide his application for relief on August 18, 2026, and that, under *Yajure-Hurtado*, the court lacked jurisdiction for bond. *Id.* at 05:50-06:08.

The IJ asked whether Petitioner applied for asylum and whether he filed within one year from his last arrival. *Id.* at 06:21-06:45. Petitioner's attorney responded that he filed for asylum in 2026 and was planning on arguing for an exception to the "one year" rule. *Id.* at 07:10. The IJ asked what the exception was and Petitioner's counsel stated the exception was "based on

exceptional emergency circumstances." *Id.* at 07:23. The IJ asked what those circumstances are, but Petitioner's attorney did not immediately have an answer, stating, "I don't have those facts in front of me. We are focused on the custody determination." *Id.* at 07:31-07:39. The IJ responded, "The stronger his application, the more likely he would be to appear." *Id.* at 07:47.

The IJ asked whether Petitioner had work authorization, which was answered in the negative. *Id.* at 08:15-08:29. The IJ asked whether Petitioner had a "spouse, parent, or child in the United States who is a resident or a citizen" to which Petitioner's attorney replied that Petitioner has a sibling in the United States. *Id.* at 08:36-08:51. The IJ asked whether that sibling had "immigration status" to which Petitioner's attorney stated she did not know. *Id.* at 09:06.

Finally, the IJ asked about Petitioner's property—whether he had any "real property, any bank accounts, any other assets." *Id.* at 09:46-09:55. Petitioner informed the IJ that he possessed a vehicle. *Id.* at 10:31.

The IJ then issued her ruling, finding "in the first instance" that "there is no jurisdiction under the Board's decision in *Yajure-Hurtado* in that Respondent has not been admitted to the United States and the court would not have jurisdiction." *Id.* at 10:45-11:05. In the alternative (*i.e.*, if the court *did* have jurisdiction), the IJ did not find Petitioner to be a danger. *Id.* at 11:15. However, the IJ found Petitioner to be a flight risk "given his short amount of time in the United States, lack of relatives, and limited forms of protection." *Id.* at 11:20-11:38. Due to these factors, the IJ found Petitioner would be unlikely to appear for any future hearings. *Id.* at 11:45. Accordingly, the IJ denied bond, but alternatively found that Petitioner did not meet his burden. *Id.* at 12:03-12:19.

Thus, from the audio, it is apparent that the IJ's alternative denial of bond was based on Petitioner's short amount of time in the United States, a lack of relatives, and limited immigration-related relief. Petitioner asserts that these "limited reasons" did not cure the IJ's defect in failing to consider or reference the "30-plus pages of evidence" that he submitted in support of his request, which, when applied to the *Guerra* factors, weigh in favor of bond. Dkt. 1 at 15-16. Respondents do not substantively respond to Petitioner's arguments, argue Petitioner *is* a flight risk, or otherwise seek to "defend" the IJ's decision. *See generally* Dkt. 6. Instead, Respondents primarily argue that Petitioner failed to exhaust his administrative remedies and that, should relief be granted, it should be in the form of an order directed to the IJ to issue a written bond memorandum. *Id.* at 1-2, 5-12.

The Court finds that the IJ committed two legal errors at the bond hearing. The first error, as conceded by Respondents, *see* Dkt. 6 at 1-2, was the IJ's determination that the court lacked jurisdiction because Petitioner's detention was mandatory under § 1225(b) pursuant to *Yajure Hurtado*.

In *Rodriguez*, the district court certified a "Bond Denial Class," comprised of noncitizens, like Petitioner here, who entered without inspection:

> Bond Denial Class: All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

802 F. Supp. 3d at 1309.

The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of

> denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.*

At the July 16, 2026, bond hearing, Petitioner's counsel asserted class membership under *Rodriguez Vazquez*. Dkt. 9 at 03:25-03:30. The Government argued the court lacked jurisdiction because Petitioner was mandatorily detained [under § 1225(b)], despite Petitioner meeting the class definition. *Id.* at 05:19-06:05. The IJ did not engage with either position, but must have necessarily agreed with the government because she summarily concluded the court lacked jurisdiction to consider bond "under the Board's decision in *Yajure-Hurtado*." *Id.* at 10:45-11:05.

On July 30, 2026, the Ninth Circuit affirmed *Rodriguez*, "eliminating doubt in this Circuit regarding a [Bond Denial Class member's] entitlement to a bond hearing and the IJ's power to grant him bond." *Medina Taizan v. Scott*, No. 2:26-CV-02465, Dkt. 9 at 6-7 (W.D. Wash. Aug. 13, 2026) (citing *Rodriguez Vazquez*, 183 F.4th at 1165). While the Ninth Circuit had not yet decided *Rodriguez Vazquez* at the time of Petitioner's July 16, 2026, hearing, this Court agrees with, and incorporates by reference, the district court's analysis in *Rodriguez* and finds that Petitioner met the Bond Denial Class definition and was therefore entitled to the discretionary detention scheme under § 1226(a). It was error for the IJ to conclude otherwise and decline jurisdiction.

As for the IJ's alternative flight risk finding, the Court finds the IJ also abused her discretion when she failed to meaningfully engage with the relevant evidence or provide any rationale as to why Petitioner's significant ties to the United States were ultimately outweighed by the factors she found relevant: the length of time in the United States, Petitioner's lack of relatives, and limited immigration-related relief.

As for the length of time spent in the United States, Petitioner presented evidence that he has lived in the United States for almost six years and has lived at the same address in Spokane Valley since 2023, where he planned on returning if released. *See* Dkt. 1-3 at 18. The IJ found Petitioner to be a flight risk "given his short amount of time in the United States" but failed to articulate why six years was "short," what she would have considered "long," and why six years in the United States demonstrated he was unlikely to appear for future immigration proceedings. The IJ similarly failed to articulate why a "lack of relatives" in the United States made Petitioner a flight risk. Petitioner's motion, submitted prior to the bond hearing, documents that Petitioner supported his partner and "contributed to the care and well-being of his partner's children[.]" *Id.* at 6. However, the IJ failed to either acknowledge these ties to the United States or articulate why they were outweighed by a "lack of relatives," such that it was rational to conclude Petitioner was likely to abscond rather than return to his family. Thus, as it relates to these first two factors—Petitioner's time in the United States and the absence of relatives—the Court is left to speculate as to the IJ's rationale and the weight afforded Petitioner's countervailing evidence. *See, e.g.*, *Soto Gimenez v. Hernandez*, C26-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) ("[B]ond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not met, a resulting bond denial decision violates due process.").

The IJ's focus on Petitioner's purportedly limited immigration relief presents a closer question. The BIA has acknowledged that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a] [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or

otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). However, the mere lack of potential forms of immigration relief do not, standing alone, suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011), *abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)); *Henry A.V.L. v. Warden of the Cent. Valley Annex Det. Facility*, 2026 WL 1999944, at *3 (E.D. Cal. July 10, 2026) (collecting district court cases within the Ninth Circuit).

Here, much of the IJ's focus during the hearing appeared to be on the merits of Petitioner's application for relief. As outlined above, the IJ asked several questions about Petitioner's asylum application, including the timing of the filing and the underlying merits of the application. Petitioner's counsel responded that the application was recently filed and they anticipated arguing for an exception to the "one year" deadline based on exceptional and emergency circumstances. Petitioner's counsel informed the IJ that she did not have all of the relevant information in front of her and could not answer her questions.

Despite not having all of the relevant information, it appears the IJ concluded—in less than two minutes—that because Petitioner's application for relief lacked merit, he was a flight risk. It was reasonable for the IJ to ask Petitioner's attorney about the underlying merits of the application, but it was not reasonable to then render a decision, even informally, on the application when it was undisputed the IJ was not informed of the legal theories Petitioner intended to advance at his upcoming asylum hearing. And to then rely on that unapprised conclusion to find Petitioner posed a flight risk, particularly without articulating why Petitioner's

unadjudicated claim for relief outweighed the other evidence submitted by Petitioner tending to support bond, was an abuse of discretion that deprived Petitioner of due process. *See Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026).

"Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." *Soto Gimenez* 2026 WL 1156075, at *6 (collecting cases). Here, the IJ did not discuss, or even acknowledge, much of the information contained within Petitioner's bond motion, including his stable employment history, community ties, letters of support, the U.S.-based citizen willing to sponsor him, his lack of criminal history, and his lack of absconding history. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to 'consider and address in its entirety the evidence submitted by a petitioner'"). Nor did the IJ draw the connection between Petitioner's length of time in the United States, his lack of relatives, or the strength of his relief to an individualized risk of flight, such that it was reasonable to conclude Petitioner's ties to, and equities within, the United States were outweighed by those three identified bases. When the Court is "left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors" then the "Court must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026).

Respondents contend that, should the Court grant relief, the appropriate remedy is an order requiring the IJ to issue a written memorandum "clearly setting forth the reasoning for finding the Petitioner a flight risk." Dkt. 6 at 11. Respondents do not identify any legal authority for this Court to do so. *See id.* Regardless, the Court finds that the contemporaneous

hearing audio allows the Court to better assess the IJ's bond decision. While a written decision may give an IJ the opportunity to further articulate and explain their bond decision, it may not necessarily reflect the IJ's rationale on the date of the hearing. *See Singh*, 638 F.3d at 1208 (recognizing "[p]ost-hoc reconstruction" can be inadequate because, "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding"). Further, the Court questions any blanket requirement that a noncitizen should first appeal their bond denial and wait for a written order to issue before challenging that decision in a habeas action. *See, e.g.*, *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 242 (1958) (Frankfurter, J., dissenting) ("[S]ince the parties must be in a position to make an intelligent choice whether or not to appeal, the court must inform them not only that it has decided the case, but what it has decided."); *Yong v. Reg'l Manpower Adm'r, U.S. Dept. of Lab.*, 509 F.2d 243, 246 (9th Cir. 1975) (acknowledging one cannot "set forth the particular grounds upon which [a] request is based unless he knows the foundation of the denial") (citation modified); *Guzman-Juarez v. Wamsley*, C26-1791-TMC, 2026 WL 1911506, at *5 (W.D. Wash. July 2, 2026) ("[H]ow can the detainee make an informed decision whether to appeal if the IJ does not explain any reasons for his detention?").

Courts in this District have, under similar facts and circumstances, found no basis for continuing to detain petitioners and ordered their immediate release. *See, e.g., Segura Serrano*, 2026 WL 1674357, at *9; *Vasquez Lopez*, 830 F. Supp. 3d at 1103. *See also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release.") (internal and other citations omitted). The Court here similarly finds no basis for Petitioner's continued detention and his immediate release with reasonable conditions of supervision to be the appropriate remedy.

**C. Remaining Claims and Requested Relief**

In granting release under Petitioner's procedural due process claim, the Court need not reach Petitioner's remaining claims, as the requested relief is duplicative. Petitioner's claims arising under substantive due process (Dkt. 1 at 17-18) and *Mathews v. Eldridge*, 424 U.S. 319 (1976) (*id.* at 18-22) are DENIED as MOOT.

Petitioner also seeks declaratory and injunctive relief. He seeks a "declaration that the Tacoma Immigration Court . . . maintains both [the] jurisdiction over [his] custody proceedings and the authority to release [him] on bond." Dkt. 1 at 22. Petitioner's request for a permanent injunction reads, in full:

> INJUNCTIVE RELIEF. Pursuant to the Court's equitable powers, Fed. R. Civ. P. 65, and the All Writs Act, 28 U.S.C. § 1651, enter:
>
> a. Preliminary injunction immediately prohibiting Respondents, their agents, employees, and all persons acting in concert with them from continuing to detain [him] pending his underlying removal proceedings and any relevant appeals and adjudication of immigration petitions;
>
> b. A permanent injunction barring Respondents from attempting to subject [him] to 8 U.S.C. § 1225's mandatory detention provision;
>
> c. A permanent injunction barring Respondents from refusing to recognize jurisdiction over [his] custody redetermination and bond request;
>
> d. A permanent injunction barring Respondents from refusing to afford [him] a custody redetermination hearing before a neutral adjudicator in light of his unlawful detention;
>
> e. A permanent injunction barring Respondents from re-detaining [him] and revoking his release absent a pre-deprivation hearing where [he] has notice and opportunity to be heard;
>
> f. An order retaining jurisdiction to monitor and enforce compliance with the foregoing injunctions.

*Id.*at 24-25.

Petitioner does not develop a factual record or provide legal authority for his extensive requests. *See generally* Dkt. 1. Further, the Court's order granting Petitioner's release from custody appears to address much of the conduct he seeks to enjoin. The Court DENIES these requests as inadequately briefed and declines to retain jurisdiction. Nothing from this Court's Order prevents Petitioner from again seeking relief in this Court should he deem it necessary.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS:

(1) Petitioner's petition for writ of habeas corpus, Dkt. 1, is GRANTED in part.

(2) Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**.

(4) Petitioner's remaining claims are DENIED as MOOT.

(5) Petitioner's requests for declaratory and injunctive relief are DENIED given the other, sufficient relief provided herein.

(6) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 2nd day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

///